[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-12195

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 11, 2010
JOHN LEY
CLERK

D. C. Docket No. 05-01932-CV-VEH-PWG

DERRICK O'NEAL MASON,

Petitioner-Appellant,

versus

RICHARD F. ALLEN,
Commissioner, Alabama Department of
Corrections,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(May 11, 2010)**

Before DUBINA, Chief Judge, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

Derrick O'Neal Mason appeals from the denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Mason was convicted in 1998 for the murder of Angela Michele Cagle, who was found dead in the back room of a convenience store in Alabama on March 27, 1994. Mason became a suspect in the Cagle murder after an unidentified man told the police that Mason had committed the crime, described the gun used, and told the police that Mason "was out of control" and "trying to make a name for himself." A few days after the murder, on March 29, 1994, the unidentified informant led the police to Mason's car where Mason was arrested on an outstanding warrant for a misdemeanor assault. As part of an inventory search, police searched Mason's car and found a gun that laboratory results later indicated was the same gun used in Cagle's murder. After arresting Mason around 10:00 p.m., police held him in an interrogation room, first interrogating him on the assault for which he was arrested, then on an unrelated prior robbery, and then on the murder at issue. Approximately two hours later, Mason confessed to committing the murder.

Mason was tried, found guilty, and the jury voted 10-2 to sentence him to death, a recommendation the trial court accepted. The Alabama Court of Criminal Appeals and the Alabama Supreme Court affirmed Mason's conviction and death

2

sentence in 1998 and 2000, respectively, and the United States Supreme Court denied Mason's petition for a writ of certiorari.

On October 17, 2001, Mason filed a Rule 32 petition in the Madison County Circuit Court, which was denied on July 7, 2005.[1] The Alabama Court of Criminal Appeals dismissed Mason's appeal of that decision, and the Alabama Supreme Court denied certiorari review. Mason then initiated federal habeas corpus proceedings in the Northern District of Alabama, and his petition was denied. After an unsuccessful motion to alter or amend the judgment, Mason filed a Notice of Appeal. This Court granted Mason's application for a Certificate of Appealability on the following issues:

- whether Mason's Fourth Amendment rights were violated by his pretextual arrest and the subsequent search of his vehicle;

- whether Mason's confession was coerced and therefore involuntary, in violation of the Fifth Amendment; and

- whether Mason's rights under the Confrontation Clause were violated when a police officer testified to the allegedly hearsay statements made by the informant.

### Standard of Review

We review the district court's conclusions on legal questions and mixed

---

[1] Due to a clerical error, neither Mason nor the government was notified of the trial court's original ruling, issued on August 5, 2004, until April of 2005, and the court reissued the denial on July 7, 2005.

questions of law and fact de novo and its factual findings for clear error. Rhode v. Hall, 582 F.3d 1273, 1279 (11th Cir. 2009). However, our review of the Alabama courts' decisions[2] are limited by the terms of 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). See 28 U.S.C. § 2254; Williams v. Taylor, 529 U.S. 362, 402-03 (2000). Under AEDPA, we accord a presumption of correctness to a state court's factual findings. § 2254 (e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). We therefore grant habeas relief to a petitioner challenging a state court's factual findings only in those cases where the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). See Wiggins v. Smith, 539 U.S. 510, 528-29 (2003).

AEDPA similarly constrains our review of legal questions decided on the merits in state court. Under the statute, we cannot grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless:

---

[2] When the last state court rendering judgment affirms without explanation, we presume that it rests on the reasons given in the last reasoned decision. Ylst v. Nunnemaker, 501 U.S. 797, 803-05 (1991); Sweet v. Sec'y, Dep't of Corrs., 467 F.3d 1311, 1316-17 (11th Cir. 2006).

[T]he adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). The Supreme Court has further explained the requirements of § 2254(d) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13. When, however, a claim is properly presented to the state court, but the state court does not adjudicate it on the merits, we review de novo. Cone v. Bell, — U.S. —, 129 S.Ct. 1769, 1784 (2009).

If a petitioner fails to "properly" present his claim to the state court – by exhausting his claims and complying with the applicable state procedure – prior to bringing his federal habeas claim, then AEDPA typically bars us from reviewing the claim. Exhaustion requires that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete

5

round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see § 2254(b),(c). That is, to properly exhaust a claim, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (quotation and emphasis omitted).

In the process of exhausting a claim, the petitioner must comply with all "independent and adequate" state procedures, or else the petitioner will have procedurally defaulted on that claim. See Wainright v. Sykes, 433 U.S. 72, 86-87 (1977); Bailey v. Nagle, 172 F.3d 1299, 1302-03; § 2254(b),(c). Where a petitioner has not "properly . . . presented his claims to the state courts," he will have "procedurally defaulted his claims" in federal court. O'Sullivan, 526 U.S. at 848. To determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision, this court has set forth the following three-part test: (1) "the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim[; (2)] the state court's decision must rest solidly on state law grounds, and may not be "intertwined with an interpretation of federal law[;]" and (3) the state procedural rule must not be applied in an arbitrary or unprecedented fashion. Judd v. Haley,

6

250 F.3d 1308, 1313 (11th Cir. 2001). We review de novo the district court's

determination that a claim has been procedurally defaulted. See Mize v. Hall, 532

F.3d 1184, 1190 (11th Cir. 2008).

Under this framework, we address each argument in turn.

### Pretextual Arrest and Vehicle Search

Mason first argues that he was subjected to a pretextual arrest on a

misdemeanor assault warrant, in violation of his Fourth Amendment rights, and,

accordingly, the gun found in his vehicle in conjunction with this arrest should not

have been admitted into evidence.[3] He also claims that the search of his vehicle

was an improper inventory search, in violation of the Fourth Amendment. We find

that Stone v. Powell, 428 U.S. 465 (1976), precludes our consideration of these

arguments. In Stone, the Supreme Court narrowly delineated the scope of review

over Fourth Amendment claims in federal habeas corpus actions brought under 28

U.S.C. § 2254. The Court held in that case that:

> where the state has provided an opportunity for full and fair litigation
> of a Fourth Amendment claim, a state prisoner may not be granted
> federal habeas corpus relief on the ground that evidence obtained in an
> unconstitutional search or seizure was introduced at his trial.

428 U.S. at 494; see Peoples v. Campbell, 377 F.3d 1208, 1224-26 (11th Cir. 2004)

---

[3] For the first time on appeal, Mason also argues that the pretextual arrest violated his
Fifth and Sixth Amendment rights. Thus, because they were waived below, we decline to
address these arguments.

7

(holding that Stone precluded consideration on habeas review of claim alleging arrest lacked probable cause); Bradley v. Nagle, 212 F.3d 559, 564 (11th Cir. 2000) (holding that Stone precluded consideration of claim alleging an invalid search).

Mason attempts to distinguish Stone, arguing that it should not be applied to his case because the state trial court did not engage in fact-finding on his claim that his pretextual arrest violated the Fourth Amendment. We do not find any merit to this argument, as Mason concedes that all the facts relevant to this claim are undisputed. Bradley, 212 F.3d at 565 ("[F]ull and fair consideration . . . includes at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when there are facts in dispute, and full consideration by an appellate court when the facts are not in dispute.") (internal quotation marks omitted).

Nor can it be argued that the state appellate court failed to provide "full consideration" of Mason's claim challenging his arrest. The Alabama Court of Criminal Appeals, in discussing this claim, noted that Mason "d[id] not challenge the validity of the arrest warrant," and held that the officer's subjective intent in arresting Mason was irrelevant. Mason v. State, 768 So. 2d 981,1001 (Ala. Crim. App. 1998). As long as the arrest was "objectively authorized," it was a valid

8

arrest.  Id.  We note that the same result would obtain under Whren v. United

States, 517 U.S. 806, 813 (1996) (holding that an officer's "[s]ubjective intentions

play no role" in the analysis of a Fourth Amendment claim).

Likewise, Mason presented to the state courts his argument that the

inventory search of his car was unlawful and the claim received full and fair

consideration.  Mason's counsel cross-examined two police officers regarding the

arrest and argued this claim to the trial court.  On appeal, the Alabama Court of

Criminal Appeals thoroughly analyzed this legal claim.  See Mason, 768 So. 2d at

996-99.  Because Mason received "full and fair consideration" of these Fourth

Amendment claims, we are precluded from considering them here.  Stone, 428

U.S. at 494.

Involuntary Confession

Next, Mason argues that his confession was involuntary because he was (1)

subjected to improper questioning; (2) intoxicated and hungry during the

interrogation; (3) psychologically coerced, and (4) misled by law enforcement

officers.  Mason also argues that, due to this alleged coercion, he was unable to

validly waive his right to not self-incriminate when Miranda warnings were read to

him.[4]  The government argues that the claim is procedurally defaulted and, in the

_____

[4] Although Mason argues that Officer Renfroe did not read him his Miranda warnings before initiating questioning on the Cagle murder, the record shows that Officer Parker did read

9

alternative, that Mason was adequately advised of his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), before being questioned about the murder.

On direct appeal, Mason did not include any allegations of coercion in his brief. Mason argued only the following to the state appellate court:

> Mason confessed to the third-degree assault, and as such any further questioning of Mason regarding other alleged incidents was in violation of his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). The continued questioning of Mason after his alleged statement regarding the misdemeanor assault was in violation of his rights under <u>Miranda</u>, and as such, the alleged custodial statement should have been suppressed by the trial court.

In his Rule 32 petition, however, Mason alleged that police interrogators grabbed him, pinned him down to his chair, and forced him to look at photographs (presumably of the crime scene), and argued that this conduct rendered his confession coerced and involuntary. The Rule 32 trial court found that this claim was procedurally defaulted under Alabama law because it could have been but was not raised on direct appeal. <u>See</u> Ala. R. Cr. P. 32.2(a)(5). The Alabama court's ruling is based on an independent and adequate ground, and Mason does not argue otherwise. Thus, Mason's claim that his confession was coerced was procedurally defaulted and therefore we cannot review it. 28 U.S.C. § 2254(b), (c). To the

_____

the <u>Miranda</u> warnings to Mason prior to questioning him on the murder. In total, Mason received <u>Miranda</u> warnings three times during the interrogation: before the questioning on the misdemeanor assault charge, again before being questioned on the robbery charge, and finally, before being questioned on the murder.

extent that Mason argues that the State failed to advise him of his <u>Miranda</u> rights, we find this claim refuted by the record. Accordingly, we cannot say that the state court's ruling on the legality of his confession is contrary to or an unreasonable application of clearly established federal law.

Confrontation Clause

Finally, Mason argues that his Sixth Amendment right to confront witnesses against him was violated, in both the guilt phase and the penalty phase of his trial, by the introduction of statements made to the police by an unidentified informant. The government counters that Mason failed to exhaust this claim and therefore AEDPA precludes federal court review. § 2254(b)(1)(A). In the alternative, the government argues that the out-of-court statements were not hearsay (i.e., they were not offered for the truth of the matter asserted) and, thus, no Sixth Amendment violation occurred.

Before trial, Mason made multiple motions to reveal the identity of the informant and for production of documents listing individuals whom the prosecution had interviewed but did not intend to call as witnesses. The trial court denied all of these motions. At trial, Investigator Harry Renfroe testified that the informant told him that Mason committed the murder, and that Mason was "out of control" and "out to make a name for himself." Mason did not make a

contemporaneous objection. In closing argument during guilt phase, the prosecutor

told the jury:

> Now, as a matter of law, information provided by a confidential informant is admissible . . . to the finders of the fact, you must simply take, because it has been held admissible, the information that the confidential informant provided, as a matter of law.
>
> This confidential informant, who is obviously known to this defendant, perhaps even a close friend of this defendant, said that he came to Investigator Renfroe because this young man, Derrick Mason, was out of control and wanting to make a name for himself on the streets.

In closing argument during the sentencing phase, the prosecution again

referred to the informant's statements, telling the jury:

> [O]ne theme kept coming out . . . [at] some point in time, I believe one of the witnesses characterized it this way: At some point in time the defendant took a wrong turn. Took a wrong turn, became out of control. We heard that from more than one witness. Became out of control. There comes a time in all of our lives when we have to accept responsibility for what we do . . . .
>
> You heard him on the witness stand. He wants to be a leader, he hopes that he can get a life without parole in the penitentiary so he can be a role model for other young people. Ladies and gentlemen, we have got a lot of good role models, we don't need this defendant as a role model for our young people.
>
> And like all of the modern-day criminals, he wants to write a book, wants to profit from what's happened to him and the horror and the tragedy that he has inflicted upon another family, including his own family.

No evidence was presented, at either the guilt or penalty phase, to support the

argument that Mason wanted to write a book based on his criminal conduct.

We first reject the government's argument that Mason failed to fairly present his Confrontation Clause argument to the state court and therefore failed to exhaust his claim.[5]  However, the state court did not address the federal Sixth Amendment claim.  Thus, we review this claim de novo.  Cone, 129 S. Ct. at 1784.

At the time of Mason's trial, the law provided that the Confrontation Clause precludes the admission of hearsay statements from an unavailable witness unless the statements fall within a firmly rooted hearsay exception or contain a particularized guarantee of trustworthiness.  Ohio v. Roberts, 448 U.S. 56, 66 (1980).[6]  The State concedes that the statements do not bear a particularized

---

[5] In his brief to the Alabama Criminal Court of Appeals, Mason alleged the following:

> The informant was allowed to not only supply information to Renfroe, but the informant's statements were presented in front of the jury.  Renfroe was allowed to testify that the informant told him that the weapon used was a .380 caliber, that the offender was Derrick Mason, and that Mason was 'out of control and was trying to make a name for himself.' . . . [T]he informant's testimony was clearly hearsay and Mason was deprived of his Sixth Amendment right to confront the witness who accused him of this crime.

Mason cited the Sixth Amendment as a legal basis for his argument and presented the factual allegations to make up a Sixth Amendment claim, which clearly alerted the state court that he was asserting a federal constitutional issue.  See Snowden v. Singletary, 135 F.3d 732, 735-36 (11th Cir. 1998) (holding that exhaustion requires only "mak[ing] the state court aware that the claims asserted present federal constitutional issues").

[6] Since Roberts, the Supreme Court has held that the Confrontation Clause forbids "testimonial" statements unless the defendant has the opportunity to cross-examine the declarant. A statement is testimonial if it was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford v. Washington, 541 U.S. 36, 52 (2004) (quotation omitted).

13

guarantee of trustworthiness or fall within a firmly rooted hearsay exception. Rather, the State argues that the statements are not hearsay at all because they were admitted to show a sequence of events, not for the truth of the matter asserted therein.

The record, however, belies the State's assertion. The prosecutor clearly used the hearsay statements to establish the truth of the matter asserted. In addition to the manner in which the testimony was presented, the prosecutor, in closing, told the jury they must accept the hearsay testimony "because it has been held admissible . . . as a matter of law." (emphasis added). Worst of all, during the penalty phase, the prosecutor told the jury as a matter of fact that Mason wanted to write a book without a scintilla of evidence in the record to support such an assertion. It is clear that the prosecutor relied on these statements during closing arguments for the truth of the matter asserted therein at both the guilt phase and the sentencing phase, violating Mason's rights under the Confrontation Clause.

However, notwithstanding the Confrontation Clause violation, we cannot reverse a conviction or order a new sentencing hearing if the error is harmless. United States v. Mills, 138 F.3d 928, 938 (11th Cir. 1998). Whether an error is harmless is a mixed question of law and fact that we review de novo. See Smith v. Singletary, 61 F.3d 815, 817 (11th Cir. 1995) (per curiam). In habeas proceedings,

14

we review whether a constitutional violation is harmless by determining "whether the error had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Sims v. Singletary, 155 F.3d 1297, 1315 (11th Cir. 1998) (citation omitted). To show prejudice under Brecht, there must be "more than a reasonable possibility that the error contributed to the [conviction or] sentence." Horsley v. State of Ala., 45 F.3d 1486, 1493 (11th Cir. 1995); Brecht, 507 U.S. at 637. We analyze the effect of the Confrontation Clause violation by looking at several factors, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, . . . and, of course, the overall strength of the prosecution's case." Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).

Under this standard, Mason cannot show the prejudice required in order to reverse his conviction. Mason confessed to the murder shortly after being arrested, and the murder weapon was found in his car. Mason's confession was thorough and described in detail the murder scene found by the officers. When viewed in light of the overall strength of the prosecution's case and the presence of corroborating evidence, we cannot say that there was "more than a reasonable

15

possibility that the [Confrontation Clause] error contributed to the [conviction]." Horsley, 45 F.3d at 1493.

As to the sentencing phase, Mason appears to argue that the statement that he was out of control was prejudicial because it tended to support the "heinous, atrocious, and cruel" aggravating factor. Although we find that the statement was improperly admitted and that the prosecutor wrongfully argued to the jury that Mason intended to write a book when there was absolutely no evidence supporting that statement, we cannot say that the prosecutor's erroneous conduct had a "substantial and injurious effect" on the jury's death recommendation in light of the nature of the crime and the mitigating evidence presented.

Even without the improper testimony and argument, there was sufficient evidence to support the heinous, atrocious, and cruel aggravating factor. Mason himself presented testimony that he lacked the ability to control his behavior. Mason's family also testified that at times they could not control Mason, and that they put him on various medications to help him control himself and, even then, he would still have problems. Based on this testimony, his counsel was able to argue to the jury that three statutory mitigating circumstances were present, including that Mason had substantially-impaired capacity to appreciate the criminality of his conduct or to conform his conduct to the law. The informant's statement that

16

Mason was "out of control" is hardly prejudicial if the defense also argued that Mason could not control his behavior as a mitigating circumstance. Under all of the circumstances presented in this record, we conclude that Mason has failed to show "more than a reasonable possibility that the error contributed to the sentence." Horsley, 45 F.3d at 1493.

For the foregoing reasons, we find no reversible error in the conviction and sentence imposed here.

**AFFIRMED.**