[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13906

_____

D.C. Docket No. 7:04-cv-02923-RDP-RRA

JAMES MCWILLIAMS,

Petitioner – Appellant,

versus

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,
WARDEN, HOLMAN CORRECTIONAL FACILITY,
ATTORNEY GENERAL, STATE OF ALABAMA,

Respondents – Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(October 15, 2019)

**ON REMAND FROM THE
SUPREME COURT OF THE UNITED STATES**

Before TJOFLAT, WILSON, and JORDAN, Circuit Judges.

TJOFLAT, Circuit Judge:

Petitioner, James McWilliams, is an Alabama prison inmate awaiting execution for murder. A jury found McWilliams guilty as charged and recommended that he be sentenced to death. At McWilliams's sentencing hearing, his attorney requested, under *Ake v. Oklahoma*,[1] that the court appoint a psychiatrist to assist him in countering the State's argument that McWilliams's mental health status was insufficient to constitute a mitigating circumstance that warranted imposing a sentence of life imprisonment rather than death. The trial judge denied that request. The U.S. Supreme Court, reviewing our denial of

---

[1] 470 U.S. 68, 83, 105 S. Ct. 1087, 1096 (1985). McWilliams was indigent during all phases of the murder case. *Ake* holds that

> when [an indigent] defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.

*Id.*

> This elementary principle, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake.

*Id.* at 76.

2

McWilliams's application for a writ of habeas corpus under 28 U.S.C. § 2254,[2] concluded that the trial judge's refusal to provide the requested psychiatric assistance, which the Alabama appellate courts had upheld,[3] constituted a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law"—i.e., its holding in *Ake v. Oklahoma*—and reversed. *McWilliams v. Dunn*, 137 S. Ct. 1790, 1801 (2017) (quoting 28 U.S.C. § 2254(d)(1)).  The Court remanded the case with the instruction that we consider, under *Brecht v. Abrahamson*,[4] whether McWilliams is entitled to the habeas writ and a new sentencing hearing.  We conclude that he is.

## I.

We draw from the Supreme Court's opinion in *McWilliams v. Dunn* in describing McWilliams's murder prosecution, the circumstances that gave rise to

---

[2] *McWilliams v. Comm'r, Ala. Dep't of Corr.*, 634 F. App'x 698, 700 (11th Cir. 2015).

[3] The Alabama Court of Criminal Appeals, in affirming McWilliams's conviction and death sentence, found no error in the trial judge's denial of his *Ake* request.  *McWilliams v. State*, 640 So. 2d 982, 991 (Ala. Crim. App. 1991).  The Alabama Supreme Court, on certiorari review, affirmed the Court of Criminal Appeals decision (without expressly addressing McWilliams's *Ake* claim).  *Ex parte McWilliams*, 640 So. 2d 1015, 1016 (Ala. 1993).  Although the Supreme Court did not expressly address McWilliams's *Ake* claim, we treat the Court, in affirming the Court of Criminal Appeals' decision, as having rejected the *Ake* claim on the merits for the reasons stated by the Court of Criminal Appeals.

[4] 507 U.S. 619, 623, 113 S. Ct. 1710, 1714 (1993).  As explained *infra*, *Brecht v. Abrahamson* establishes what a § 2254 petitioner must show in order to obtain relief from a constitutional error committed during trial in a criminal prosecution in state court, which is reviewable on direct appeal.

his attorney's request for psychiatric assistance, and why the refusal of that request

ran afoul of *Ake*.

> [T]he State of Alabama charged McWilliams with rape and murder. The trial court found McWilliams indigent and provided him with counsel. It also granted counsel's pretrial motion for a psychiatric evaluation of McWilliams'[s] sanity, including aspects of his mental condition relevant to "mitigating circumstances to be considered in a capital case in the sentencing stage." . . . .
>
> Subsequently a three-member Lunacy Commission examined McWilliams . . . . The three members, all psychiatrists, concluded that McWilliams was competent to stand trial and that he had not been suffering from mental illness at the time of the alleged offense. . . .
>
> McWilliams'[s] trial took place in late August 1986. On August 26 the jury convicted him of capital murder. The prosecution sought the death penalty, which under then-applicable Alabama law required both a jury recommendation (with at least 10 affirmative votes) and a later determination by the judge. The jury-related portion of the sentencing proceeding took place the next day. The prosecution reintroduced evidence from the guilt phase and called a police officer to testify that McWilliams had a prior conviction. The defense called McWilliams and his mother. Both testified that McWilliams, when a child, had suffered multiple serious head injuries. McWilliams also described his history of psychiatric and psychological evaluations, reading from the prearrest report of one psychologist, who concluded that McWilliams had a "blatantly psychotic thought disorder" and needed inpatient treatment.
>
> . . . .
>
> Although McWilliams'[s] counsel had subpoenaed further mental health records from Holman State Prison, where McWilliams was being held, the jury did not have the opportunity to consider them, for, though subpoenaed on August 13, the records had not arrived by August 27, the day of the jury hearing.
>
> After the hearing, the jury recommended the death penalty by a vote of 10 to 2, the minimum required by Alabama law. The court scheduled its judicial sentencing hearing for October 9, about six weeks later.

4

Five weeks before that hearing, the trial court ordered the Alabama Department of Corrections to respond to McWilliams's subpoena for mental health records. The court also granted McWilliams'[s] motion for neurological and neuropsychological exams. . . .

. . . Dr. John Goff, a neuropsychologist employed by the State's Department of Mental Health, examined McWilliams. On October 7, two days before the judicial sentencing hearing, Dr. Goff filed his report. The report concluded that McWilliams presented "some diagnostic dilemmas." On the one hand, he was "obviously attempting to appear emotionally disturbed" and "exaggerating his neuropsychological problems." But on the other hand, it was "quite apparent that he ha[d] some genuine neuropsychological problems." . . . .

The day before the sentencing hearing defense counsel also received updated records from Taylor Hardin hospital, and on the morning of the hearing he received the records (subpoenaed in mid-August) from Holman Prison. The prison records indicated that McWilliams was taking an assortment of psychotropic medications . . . .

The judicial sentencing hearing began on the morning of October 9. Defense counsel told the trial court that the eleventh-hour arrival of the Goff report and the mental health records left him "unable to present any evidence today." He said he needed more time to go over the new information. Furthermore, since he was "not a psychologist or a psychiatrist," he needed "to have someone else review these findings" and offer "a second opinion as to the severity of the organic problems discovered."

. . . [D]efense counsel moved for a continuance in order "to allow us to go through the material that has been provided to us in the last 2 days."[5] The judge offered to give defense counsel until 2 p.m. that afternoon. He also stated that "[a]t that time, The Court will entertain any motion that you may have with some other person to review" the new material. Defense counsel protested that "there is no way that I can go through this material," but the judge immediately added, "Well, I

---

[5] Two attorneys represented McWilliams throughout his trial and the sentencing hearing before the trial judge.  Only one of the attorneys was involved in the exchanges with the judge regarding the need for psychiatric assistance.

will give you the opportunity. . . . If you do not want to try, then you may not." The court then adjourned until 2 p.m.

During the recess, defense counsel moved to withdraw. . . . The trial court denied the motion . . . .

When the proceedings resumed, defense counsel renewed his motion for a continuance, explaining,

> "It is the position of the Defense that we have received these records at such a late date, such a late time that it has put us in a position as laymen, with regard to psychological matters, that we cannot adequately make a determination as what to present to The Court with regards to the particular deficiencies that the Defendant has. We believe that he has the type of diagnosed illness that we pointed out earlier for The Court and have mentioned for The Court. But we cannot determine ourselves from the records that we have received and the lack of receiving the test and the lack of our own expertise, whether or not such a condition exists; whether the reports and tests that have been run by Taylor Hardin, and the Lunacy Commission, and at Holman are tests that should be challenged in some type of way or the results should be challenged, we really need an opportunity to have the right type of experts in this field, take a look at all of those records and tell us what is happening with him. And that is why we renew the Motion for a Continuance."

The trial court denied the motion.

The prosecutor then offered his closing statement, in which he argued that there were "no mitigating circumstances." Defense counsel replied that he "would be pleased to respond to [the prosecutor's] remarks that there are no mitigating circumstances in this case if I were able to have time to produce . . . any mitigating circumstances." But, he said, since neither he nor his co-counsel were "doctors," neither was "really capable of going through those records on our own." . . .

The trial judge then said that he had reviewed the records himself and found evidence that McWilliams was faking and manipulative. . . .

. . . .

The court then sentenced McWilliams to death.

6

*McWilliams*, 137 S. Ct. at 1794–97 (alterations within quotation marks in original) (citations omitted).

McWilliams appealed, arguing that the trial court had erred in denying him the right to meaningful expert assistance guaranteed by *Ake*. The Alabama Court of Criminal Appeals disagreed. It wrote that *Ake*'s requirements "are met when the State provides the [defendant] with a competent psychiatrist." *McWilliams*, 640 So. 2d at 991. And the State, by "allowing Dr. Goff to examine" McWilliams, had satisfied those requirements. *Id.*

"This was plainly incorrect," in the Supreme Court's view. *McWilliams*, 137 S. Ct. at 1800. The trial judge's conduct at the sentencing hearing "did not meet even *Ake*'s most basic requirements." *Id.* *Ake* "requires the State to provide the defense with 'access to a competent psychiatrist who will conduct an appropriate [1] *examination* and assist in [2] *evaluation*, [3] *preparation*, and [4] *presentation* of the defense.'" *Id.* (quoting *Ake*, 470 U.S. at 83, 105 S. Ct. at 1096) (alterations and emphasis in original).

> The Supreme Court assumed that the State
>
> met the *examination* portion of [the *Ake*] requirement by providing for Dr. Goff's examination of McWilliams. But what about the other three parts? Neither Dr. Goff nor any other expert helped the defense evaluate Goff's report or McWilliams'[s] extensive medical records and translate these data into a legal strategy. Neither Dr. Goff nor any other expert helped the defense prepare and present arguments that might, for example, have explained that McWilliams'[s] purported malingering was not necessarily inconsistent with mental illness . . . . Neither Dr.

7

Goff nor any other expert helped the defense prepare direct or cross-examination of any witnesses, or testified at the judicial sentencing hearing himself.

*Id.* at 1800–01.

Having concluded that the Alabama courts unreasonably applied its holding in *Ake,* the Supreme Court remanded the case to us to decide if "access to the type of meaningful assistance in evaluating, preparing, and presenting the defense that *Ake* requires would have mattered." *Id.* at 1801. We deem the phrase "would have mattered" to mean whether the denial of such assistance "would have prejudiced" McWilliams in defending against the imposition of a death sentence.[6]

## II.

The trial judge's *Ake* error in refusing to grant defense counsel's request for psychiatric assistance came shortly after the sentencing hearing convened in the morning of October 9, 1986. *Brecht v. Abrahamson* dictates how we review trial judges' constitutional errors, such as this one, that occur during trial.

*Brecht* places the errors into two categories. The first involves trial errors that are subject to harmless-error review. The second involves structural errors

---

[6] In explaining that the assistance of an expert might have "mattered," the Court took issue with our conclusion below that, even if there was an *Ake* error, it did not have a "substantial and injurious effect or influence" on the sentencing—the standard under *Brecht* for determining whether to grant habeas relief under § 2254 for a trial court error. *McWilliams*, 137 S. Ct. at 1801 (quoting *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015)). Thus, to determine whether it "would have mattered," we must evaluate the error under *Brecht*.

that are not. An error in the first category is "amenable to harmless error analysis because it 'may . . . be quantitatively assessed in the context of other evidence presented [during the trial] in order to determine [the effect it had on the trial].'" *Brecht*, 507 U.S. at 629, 113 S. Ct. at 1717. These errors involve, for the most part, the admission of evidence proffered by the State and the exclusion of evidence proffered by the accused.[7] The federal habeas court, reviewing the record of the trial, assesses the impact the error may have had on the jury's verdict. The petitioner prevails if the court finds that the error was prejudicial, i.e., that it had a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 637, 113 S. Ct at 1722.

Errors in the second category are not subject to harmless-error analysis because they are structural. An example is the denial of the right to counsel. *See Strickland v. Washington*, 466 U.S. 668, 692, 104 S. Ct. 2052, 2067 (1984). Because the absence of counsel affects "[t]he entire conduct of the trial from beginning to end," *Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S. Ct. 1246, 1265 (1991), it "def[ies] analysis by 'harmless-error' standards," *Brecht*, 507 U.S.

---

[7] Other errors in the first category include, for example, constitutional challenges to jury instructions, *see, e.g.*, *Clemons v. Mississippi*, 494 U.S. 738, 752–54, 110 S. Ct. 1441, 1450–51 (1990); *Pope v. Illinois*, 481 U.S. 497, 501–04, 107 S. Ct. 1918, 1921–23 (1987); *Rose v. Clark*, 478 U.S. 570, 579–80, 106 S. Ct. 3101, 3107–08 (1986); comments on the defendant's silence, *United States v. Hasting*, 461 U.S. 499, 508–09, 103 S. Ct. 1974, 1980 (1983); and admission of the defendant's confession, *Milton v. Wainwright*, 407 U.S. 371, 372, 92 S. Ct. 2174, 2175 (1972).

at 629, 113 S. Ct. at 1717 (quoting *Fulminante*, 499 U.S. at 309, 111 S. Ct. at 1265). Prejudice is presumed, requiring "automatic reversal of the conviction." *Id.* at 629–30, 113 S. Ct. at 1717. The error defies analysis under the harmless-error standard used to assess the prejudice caused by a trial error because the assistance that counsel would have provided to the accused at trial is unknown. It is impossible to know how an attorney would have investigated the charges, developed a defense, selected jurors, presented and examined witnesses, and argued the case to the jury in summation, or even whether an attorney would have advised proceeding to trial at all. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150, 126 S. Ct. 2557, 2564–65 (2006). As such, the effect of the denial cannot be "quantitatively assessed" in the context of the evidence presented to the jury at the trial.

The constitutional error in this case is structural. Like the denial of counsel, the *Ake* error infected the entire sentencing hearing from beginning to end, as McWilliams was prevented from offering any meaningful evidence of mitigation based on his mental health, or from impeaching the State's evidence of his mental health. The assistance a psychiatrist *would have* provided McWilliams's counsel in "evaluating, preparing, and presenting the defense that *Ake* requires" is unknown and, as such, cannot be quantitatively assessed in the context of the evidence presented to the sentencing judge. To determine whether it "would have

10

mattered"—i.e., would have helped McWilliams defend against the State's case for a death sentence and present mitigating evidence—would require us to speculate as to *how* a psychiatrist would have assisted the defense, *what* mitigating evidence the defense would have presented based on the psychiatrist's analysis, or what evidence the defense would have offered to impeach the State's evidence, and *how* the State would have responded in rebuttal. Such a hypothetical exercise, as with the denial of counsel, is all but impossible. Because *this Ake* error defies analysis by harmless-error review, prejudice to McWilliams must be presumed.[8]

### III.

Our decision in *Hicks v. Head*, 333 F.3d 1280 (11th Cir. 2003), that "an *Ake* error is a trial error . . . subject to harmless error analysis," *id.* at 1286, does not compel a different result. In reaching that conclusion, this Court in *Hicks assumed*

---

[8] The cases from our sister circuits holding that an *Ake* error is subject to harmless error review are inapposite. *See* Concurring Op. at 16 n.1 (citing *White v. Johnson*, 153 F.3d 197, 203 (5th Cir. 1998); *Tuggle v. Netherland*, 79 F.3d 1386, 1388 (4th Cir. 1996); *Brewer v. Reynolds*, 51 F.3d 1519, 1529 (10th Cir. 1995); *Starr v. Lockhart*, 23 F.3d 1280, 1291 (8th Cir. 1994), *superseded by statute on other grounds*, Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214). Except for *Starr*, in each of those cases the *Ake* request was made in anticipation that the State would introduce psychiatric testimony regarding the defendant's future dangerousness. *See White*, 153 F.3d at 203; *Tuggle*, 79 F.3d at 1391; *Brewer*, 51 F.3d at 1529–30. If the State never introduced that testimony, the right to assistance under *Ake* would never arise. Thus, any *Ake* error could not be structural. *White*, 153 F.3d at 203; *Tuggle*, 79 F.3d at 1391–92; *Brewer*, 51 F.3d at 1530; c*f. Starr*, 23 F.3d at 1291 ("We do not believe that a right to which a defendant is not entitled absent some threshold showing can fairly be defined as basic to the structure of a constitutional trial."). The case is much different when the defendant seeks to affirmatively offer evidence of his mental state, as McWilliams did here. In this context, the right to the assistance of a psychiatrist is not so conditional.

that there was in fact an *Ake* error—that the Georgia Supreme Court on direct appeal, in the context of passing on Hicks's argument that the trial court abused its discretion in denying his motion for a continuance, unreasonably rejected Hicks's *Ake* claim on the merits. But the Georgia Supreme Court never reviewed an *Ake* claim. On appeal, Hicks argued that the trial court abused its discretion in denying his motion for a continuance and motion for funds for a neurological examination so he could seek additional testing to support his *Ake*-appointed psychiatrist's opinion on his insanity defense. The Georgia Supreme Court decided, as a matter of state law, that the trial court "did not abuse its discretion" by denying Hicks's motions. *Hicks v. State*, 352 S.E.2d 762, 775 (Ga. 1987) (citing *Ealy v. State*, 306 S.E.2d 275, 279 (Ga. 1983)).[9]

The *Ake* claim this Court considered in *Hicks* did not arise until Hicks petitioned the Superior Court of Butts County, Georgia for a writ of habeas corpus. In his petition, Hicks argued that the trial court's denial of his motion for a continuance rendered his counsel ineffective under *Strickland*, insofar as he was unable to obtain a neurological examination, which he contended was part of the psychiatric assistance he was entitled to under *Ake*. The state habeas court held an

---

[9] This Court *assumed* that the Georgia Supreme Court, in finding no abuse of discretion in the trial court's denial of Hicks's motion for a continuance, rendered a decision that "was contrary to, or involved an unreasonable application of," 28 U.S.C. § 2254(d)(1), the U.S. Supreme Court's holding in *Ake*.

12

evidentiary hearing on Hicks's ineffective assistance claim, at which Hicks introduced the additional expert opinions regarding his mental condition that he would have obtained had the trial court not denied his motions. The habeas court denied Hicks's ineffective assistance claim and, in the process, his claim that the trial court violated his rights under *Ake*.[10]

The District Court was thus faced with an *Ake* claim litigated in a collateral proceeding. Reviewing the evidence Hicks presented at the evidentiary hearing in the state habeas court, the District Court held that while the denial of the continuance violated *Ake*, the error was harmless. *Hicks v. Turpin*, No. 3:97-CV-51-JTC (N.D. Ga. Sept. 2, 2000). On appeal, we *assumed* the denial of the continuance constituted an *Ake* error[11] so we could decide the sole question whether *Ake* violations are amenable to harmless error analysis. *Hicks*, 333 F.3d at 1284. We held that they are and, reviewing the same evidence the state habeas

---

[10] Hicks's *Ake* claim was cognizable on direct appeal. Therefore, under Georgia's procedural default rules, the habeas court lacked authority to entertain it. *See Whatley v. Warden, Ga. Diagnostic & Classification Ctr.*, 927 F.3d 1150, 1184 n.56 (11th Cir. 2019) (citing *Black v. Hardin*, 336 S.E.2d 754, 755 (Ga. 1985)). Nonetheless, the State, in defending the District Court's denial of Hicks's *Ake* claim in this Court, effectively waived the argument that the habeas court disregarded Georgia's procedural default rule.

[11] We indulged the assumption notwithstanding the absence of any U.S. Supreme Court precedent decided prior to Hicks's trial holding that the denial of a continuance, requested to enable an *Ake*-appointed psychiatrist to bolster her opinion, constitutes a violation of the Due Process Clause of the Fourteenth Amendment.

13

court and the District Court considered, affirmed the District Court's finding of harmless error. *Id.* at 1286–87.

Therefore, our decision in *Hicks* stands only for the narrow proposition that when an *Ake* claim is entertained on collateral attack in state court—in a hearing at which the petitioner can introduce the evidence that would have been obtained and presented at trial but for the *Ake* violation—we may review for harmless error under *Brecht*. But *Hicks* does not control the analysis of an *Ake* claim like the one presented here, which is based on a denial of psychiatric assistance and was litigated and rejected on direct appeal. Prejudice in these cases must be presumed, because the error is structural.

Our colleague argues that "the procedural history of *Hicks* . . . cannot limit its unambiguous holding that *Ake* error is subject to harmless-error review." Concurring Op. at 17. But the procedural context in which the *Ake* claim in *Hicks* arose was critical for determining whether the error could be harmless. In reviewing for harmless error under *Brecht*, we look to the record of the state *trial* court as a whole and consider whether the violation had a "substantial and injurious effect" in the context of the entire trial. *Brecht*, 507 U.S. at 638, 113 S. Ct. at 1722; *see also id.* at 641, 113 S. Ct. at 1724 (Stevens, J., concurring) (explaining that a reviewing court must "evaluate the error in the context of the entire *trial* record" (emphasis added)). In *Hicks*, because the *Ake* claim was raised

14

for the first time on collateral attack, that record encompassed the record of Hicks's trial *and* the record of the state habeas proceedings, which included the evidentiary hearing the habeas court conducted to determine, in the context of Hicks's ineffective assistance of counsel claim, whether the denial of the continuance prejudiced counsel's performance.  At that evidentiary hearing, Hicks was able to offer the expert opinions that he would have obtained before trial but for the denial of the continuance—the purported *Ake* error.  This was the body of evidence this Court (and the District Court) had before it in assessing whether the *Ake* error was amenable to harmless error review.  *See Hicks*, 333 F.3d at 1286 (relying on the evidence presented at the state habeas proceeding to find the *Ake* error harmless); *Hicks*, No. 3:97-CV-51-JTC, at 22–24 (same).

By contrast, here we have no such record from which we could assess prejudice, because there has been no evidentiary hearing convened for the express purpose of deciding whether the trial judge's error was harmless.  All we have is the record before the trial judge at the sentencing hearing.  Unlike in *Hicks*, McWilliams never had an opportunity to demonstrate what the provision of a psychiatrist would have meant to his defense.  Therefore, we cannot "quantitatively assess[ ] in the context of [the] other evidence presented [at the sentencing hearing]" the effect the denial of psychiatric assistance had on the trial judge's

15

sentencing decision. *Brecht,* 507 U.S. at 629, 113 S. Ct at 1717. Prejudice must be presumed.

IV.

For the foregoing reasons, we hold that this *Ake* error was structural. We remand the case to the District Court with instructions to issue a writ of habeas corpus vacating McWilliams's sentence and entitling him to a new sentencing hearing, following the provision of a psychiatrist to provide assistance in accordance with *Ake*.

**SO ORDERED.**

JORDAN, Circuit Judge, concurring in the judgment.

I concur in the judgment granting federal habeas corpus relief to Mr. McWilliams, but for a different reason. The majority may be right that an error under *Ake v. Oklahoma*, 470 U.S. 68 (1985), should be classified as structural, but that conclusion contradicts our prior decision in *Hicks v. Head*, 333 F.3d 1280, 1286 (11th Cir. 2003), which holds that an *Ake* error is a trial error. Because we are bound by *Hicks*, I would conduct a harmless-error analysis under *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), and *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). That review convinces me that Mr. McWilliams was harmed by the *Ake* error, so I would remand to the district court with instructions to issue a writ of habeas corpus vacating Mr. McWilliams' death sentence and ordering Alabama to provide him with a new sentencing hearing consistent with *Ake*.

# I

More than 15 years ago, we considered in *Hicks* an issue of "first impression for our circuit: whether violations of *Ake* . . . are subject to harmless error analysis[.]" 333 F.3d at 1282. We answered that question affirmatively, holding that an *Ake* error is not structural, but rather "trial error" amenable to harmless-error review. *Id.* at 1286.[1]

---

[1] Every other circuit to decide the issue has also held that an *Ake* error is subject to harmless-error review. *See White v. Johnson*, 153 F.3d 197, 203 (5th Cir. 1998); *Tuggle v.*

We then ruled that *Brecht* supplied the appropriate harmless-error standard for *Ake* violations in federal habeas cases. *See id.* at 1286. Applying *Brecht*, we concluded that the alleged *Ake* error in that case—the trial court's "denial of psychiatric assistance until a few days before trial"—was harmless because the additional expert testimony offered by the defendant in post-conviction proceedings did not "contradict[ ] the evidence presented at trial that [the defendant] understood the difference between right and wrong" at the time of the murder, and "relate[d] to the same impulse control disorder testified to [by the defendant's expert] at trial." *Id.* at 1287.

The majority believes that *Hicks* can be distinguished—and therefore avoided—because the *Ake* claim in that case was litigated in state post-conviction proceedings whereas the *Ake* claim here was litigated at trial and on direct appeal. But the procedural history of *Hicks*—while possibly relevant to the ultimate outcome—cannot limit its unambiguous holding that *Ake* error is subject to harmless-error review. *See Hightower v. Schofield*, 365 F.3d 1008, 1027 n.28 (11th Cir. 2005) ("We recently decided in *Hicks* . . . that *Ake* errors are subject to harmless

---

*Netherland*, 79 F.3d 1386, 1388 (4th Cir. 1996); *Brewer v. Reynolds*, 51 F.3d 1519, 1529 (10th Cir. 1995); *Starr v. Lockhart*, 23 F.3d 1280, 1291 (8th Cir. 1994).

18

error analysis."), *vacated and remanded*, 545 U.S. 1124 (2005), *opinion reinstated*, *Hightower v. Terry*, 459 F.3d 1067, 1071 (11th Cir. 2006).[2]

Figuring out whether a constitutional violation is structural can be difficult, as illustrated by the many opinions in *United States v. Roy*, 855 F.3d 1133 (11th Cir. 2017) (en banc). Nevertheless, the answer to that question depends on the nature of the violation, and not on when or how the error was raised or litigated. *See, e.g., United States v. Neder*, 527 U.S. 1, 14 (1999) ("Under our cases, a constitutional error is either structural or it is not."). Given our holding in *Hicks*, we are not at liberty to hold that an *Ake* error is structural. If that is going to be the new rule in this circuit, it can only be announced by the en banc court. *See United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc) (explaining that "a panel cannot overrule a prior one's holding even though convinced it is wrong").

Nor can *Hicks* be meaningfully distinguished based on its facts. In *Hicks*, as here, the trial court granted the request for psychiatric assistance, but denied a request for a continuance, failing to allow sufficient time for the court-appointed

---

[2] The majority asserts that this procedural distinction is critical because the record in *Hicks* encompassed the trial *and* the state habeas proceedings, which included the evidentiary hearing the habeas court conducted to determine, in the context of Mr. Hicks' ineffective assistance of counsel claim, whether the denial of the continuance prejudiced counsel's performance. Here too the record contains both the record of Mr. McWilliams' trial *and* the record of the state post-conviction proceedings, which included an evidentiary hearing on Mr. McWilliams' ineffective assistance of counsel claim. As discussed below, Mr. McWilliams presented testimony regarding his mental health at that hearing to support his ineffective assistance of counsel claim. As in *Hicks*, that testimony helps inform our analysis of the type of evidence Mr. McWilliams could have been presented at sentencing had the trial court provided him expert assistance in accordance with *Ake*.

19

expert to effectively assist the defense. Neither case involves an outright refusal to provide an expert under *Ake*.[3]

Specifically, in *Hicks* the trial court granted Mr. Hicks' request for psychiatric assistance, but the psychiatrist was appointed just days before the trial. *See* 333 F.3d at 1284–85 n.2. The alleged *Ake* error was the trial court's denial of Mr. Hicks' motion for a continuance and request for additional funds for neurological testing. *See id.* Here, similarly, the trial court appointed Dr. John Goff to perform neuropsychological testing requested by Mr. McWilliams' counsel, in accordance with *Ake*. But because of the trial court's denial of a continuance, Mr. McWilliams was unable to meet with Dr. Goff or another expert to help him evaluate Dr. Goff's report and the extensive medical records and translate the data into a legal strategy. Thus, the nature of the *Ake* error here is essentially the same as that in *Hicks*: the short time frame provided did not allow for meaningful expert assistance.

Because of these factual similarities, the line drawn by the majority between the "trial error" in *Hicks* and the "structural error" here will prove difficult for district courts to apply. It will be nearly impossible to determine whether *Ake* violations

---

[3] It is possible that *Hicks* would not control, and structural error would exist, had the trial court outright refused to appoint a psychiatric expert under *Ake*. Such a refusal would have been more akin to the complete denial of the right to counsel, which has been held to be structural error. *See Gideon v. Wainwright*, 372 U.S. 335, 342–45 (1963) (establishing the right to counsel for indigent criminal defendants); *Johnson v. United States*, 520 U.S. 461, 468–69 (noting the total deprivation of the right to counsel in violation of *Gideon* is structural error); *Brecht*, 507 U.S. at 629–30 (same). But, as discussed above, that is not what happened here.

raised in future habeas petitions are subject to harmless-error analysis or not. For these reasons, I would apply *Hicks*, find that the *Ake* violation constitutes trial error, and proceed to the *Brecht* harmless-error analysis.

## II

On remand from the Supreme Court, we must determine whether Alabama's *Ake* violation prejudiced Mr. McWilliams. In particular, we must "specifically consider whether access to the type of meaningful assistance in evaluating, preparing, and presenting the defense that *Ake* requires would have mattered," i.e., whether it resulted in a "substantial and injurious effect or influence." *McWilliams v. Dunn*, 137 S. Ct. 1790, 1801 (2017) (quoting *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015), and *Brecht*, 507 U.S. at 623)). I would conclude, based on the standards set forth in *Brecht* and *O'Neal*, that it would have.

## A

Our divided opinion in *McWilliams v. Commissioner, Alabama Department of Corrections*, 634 F. App'x 698 (11th Cir. 2015), rejected Mr. McWilliams' argument that the Alabama state courts unreasonably applied *Ake*. We explained that our sister circuits were divided on whether *Ake* requires a state to provide a mental health expert solely for the defense, or whether a neutral expert (available to both sides) is sufficient. *See id.* at 705–06. Given that split and the lack of a Supreme Court resolution, we held that Alabama's "provision of a neutral psychologist [in

Mr. McWilliams' case] would not be 'contrary to, or involve[ ] an unreasonable application of, clearly established Federal law.'" *Id*. at 706 (quoting 28 U.S.C. § 2254(d)(1)).

We also provided an alternative holding. "[A]ssuming an *Ake* error occurred," we denied relief because Mr. McWilliams did not show that the error had "a substantial and injurious effect on [his] sentence." *Id*. at 706–07. We reached this conclusion because the trial court "reviewed Dr. Goff's report and took into account the possibility of organic brain damage but also noted that, throughout [Mr.] McWilliams'[ ] medical records, different psychologists and psychiatrists describe him as a malingerer . . . . Based on a review of this and other evidence, the trial [court] found that [Mr.] McWilliams'[ ] 'aggravating circumstances overwhelmingly outweighed the mitigating circumstances.'" *Id*. Moreover, "[a] few additional days to review Dr. Goff's findings would not have somehow allowed the defense to overcome the mountain of evidence undercutting his claims that he suffered mental illness during the time of the crime." *Id*. at 707.

I wrote a separate concurrence agreeing that Mr. McWilliams had not shown prejudice. I reached that conclusion "in part because Mr. McWilliams did not present Dr. Goff as a witness at the state post-conviction hearing" and it was therefore difficult "to conclude that Mr. McWilliams has met his burden on

22

prejudice, as we do not know how additional time with Dr. Goff (and his report) would have benefitted the defense." *Id.* at 712 (Jordan, J., concurring).

Judge Wilson dissented, concluding both that the Alabama courts unreasonably applied *Ake* and that Mr. McWilliams demonstrated that this error had a substantial and injurious effect on his sentence. *See id.* at 713–17 (Wilson, J., dissenting). Regarding prejudice, Judge Wilson determined that the *Ake* error "precluded [Mr.] McWilliams from offering evidence that directly contradicted the psychiatric evidence put forward by the state." *Id.* at 716–17. Moreover, testimony from the Rule 32 post-conviction hearing established that "with appropriate assistance, he would have been in position to confront the State's evidence that he was merely feigning mental health issues." *Id.* at 717. In particular, Dr. George Woods explained that Mr. McWilliams would have presented "different," significantly "more viable" mental health evidence had he been "afforded an expert who actually reviewed his full psychiatric history and had more than a few hours to assist the defense." *Id.*

Mr. McWilliams appealed the denial of his *Ake* claim. The Supreme Court granted certiorari, *see McWilliams v. Dunn*, 137 S. Ct. 808 (2017) (mem.), and then reversed. *See McWilliams*, 137 S. Ct. at 1801. The Supreme Court determined that it did not need to answer whether "*Ake* clearly established that a State must provide an indigent defendant with a qualified mental health expert retained specifically for

23

the defense team" because it found that "Alabama here did not meet even *Ake*'s most basic requirements." *Id*. at 1799–1800. The Court explained that *Ake* "requires the State to provide the defense with 'access to a competent psychiatrist who will conduct an appropriate [1] *examination* and assist in [2] *evaluation*, [3] *preparation*, and [4] *presentation* of the defense.'" *Id*. at 1800 (quoting *Ake*, 470 U.S. at 83, with emphasis in *McWilliams*).

Although it assumed that Dr. Goff met the examination requirement, the Supreme Court found *Ake* error because no expert assisted in the evaluation, preparation, or presentation of the defense. *See id*. at 1800–01. It then remanded the case to us to "specifically consider whether access to the type of meaningful assistance in evaluating, preparing, and presenting the defense that *Ake* requires would have mattered." *Id*. at 1801. Both the majority opinion and the dissent in the Supreme Court provided divergent accounts of what, in their respective views, the record showed regarding prejudice. *Compare id*. (majority opinion) ("There is reason to think that [the *Ake* error] could have [mattered]. For example, the trial judge relied heavily on his belief that McWilliams was malingering. If McWilliams had the assistance of an expert to explain that 'malingering is not inconsistent with serious mental illness,' . . . he might have been able to alter the judge's perception of the case."), *with id*. at 1809–11 (Alito, J., dissenting) (recounting the aggravating

24

circumstances and the psychological evidence presented to conclude that Mr. McWilliams failed to show prejudice).[4]

**B**

We are required to grant habeas relief to Mr. McWilliams if the *Ake* error had a "substantial and injurious effect or influence" on his sentence. *See Brecht*, 507 U.S. at 623. "To show prejudice under *Brecht*, there must be more than a reasonable possibility that the error contributed to the conviction or sentence." *Mason v. Allen*, 605 F.3d 1114, 1123 (11th Cir. 2010) (per curiam) (internal quotation marks omitted and alterations adopted). Although the *Brecht* standard "is more favorable to and less onerous on the state, and thus less favorable to the defendant, than the *Chapman* harmless beyond a reasonable doubt standard," *Brecht* is not a burden of proof. *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1111–12 & n.26 (11th Cir. 2012) (citation and internal quotation marks omitted). *See also O'Neal*, 513 U.S. at 994–95 ("[W]e deliberately phrase the issue in this case in terms of a judge's grave doubt, instead of in terms of 'burden of proof.'") (alteration added).[5]

---

[4] The prejudice discussion in the majority and dissenting opinions in *McWilliams* seems to confirm that the Supreme Court did not view the *Ake* violation as structural. If the error had been deemed to be structural, prejudice would have been presumed and Mr. McWilliams would have been given a new sentencing hearing without the need for us to conduct harmless-error analysis.

[5] There is some language in *Brecht* suggesting the Supreme Court shifted to the petitioner the burden to show prejudice. *See Brecht*, 507 U.S. at 637 (stating habeas petitioners "are not entitled to habeas relief based on trial error unless *they* can establish that it resulted in 'actual prejudice'") (emphasis added). The Supreme Court, however, subsequently clarified in *O'Neal*

25

When considering whether a defendant was prejudiced by a constitutional error that affected his presentation of mitigating evidence, we have to "evaluate the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding"—and "reweigh[ ] it against the evidence in aggravation." *Williams v. Taylor*, 529 U.S. 362, 397–98 (2000) (citing *Clemons v. Mississippi*, 494 U.S. 738, 751–52 (1990)). *See also Hicks*, 333 F.3d at 1286–87. So, in order to answer the specific question remanded to us by the Supreme Court, we must first understand what sort of assistance in evaluation, preparation, and presentation of the defense Dr. Goff provided (or could have provided). We must then reweigh the mental health evidence obtained through such assistance against the evidence presented by the prosecution. If review of the record leaves us in "grave doubt about the likely effect of an error on the jury's verdict," we must "treat the error, not as if it were harmless, but as if it affected the verdict (*i.e.*, as if it had a 'substantial and injurious effect or influence in determining the jury's verdict')." *O'Neal*, 513 U.S. at 435. If we cannot say with fair assurance that

---

that this language "is not determinative." *O'Neal*, 513 U.S. at 438–39 (explaining that *Brecht* adopted the harmlessness standard of *Kotteakos v. United States*, 328 U.S. 750 (1946), which placed "the risk of doubt on the State," and that this statement in *Brecht* "did not speak for a Court majority"). *See also Fry v. Pliler*, 551 U.S. 112, 122 (2007) (Stevens, J., concurring in part and dissenting in part) ("[T]he *Brecht* standard . . . imposes a significant burden of persuasion on the State."); *Trepal*, 684 F.3d at 1111 n.26 ("We do not phrase the *Brecht* requirement as a burden of proof, for it is not.") (citing *O'Neal*, 513 U.S. at 435); *Bonner v. Holt*, 26 F.3d 1081, 1083 (11th Cir. 1994) (stating that *Brecht* "did not alter the burden of proving error harmless, which remains with the government").

the verdict—here the sentence of death—was not substantially swayed by the error, we must grant relief. *See Trepal*, 684 F.3d at 1114.

We have not yet conducted a prejudice analysis for the specific *Ake* violation articulated by the Supreme Court, as in our initial opinion we considered the alleged *Ake* error to be the failure to appoint a defense expert for Mr. McWilliams. *See McWilliams*, 137 S. Ct. at 1801 (noting that the Eleventh Circuit "did not specifically consider whether access to the type of meaningful assistance in evaluating, preparing, and presenting the defense that *Ake* requires would have mattered"). As the Supreme Court has now explained, *Ake* requires more than an examination. *See id.* at 1800–01. Our prejudice analysis on remand therefore requires more as well.

Based on my review, there is sufficient evidence in the record to conclude the *Ake* error identified by the Supreme Court had a "substantial and injurious effect or influence in determining" the trial court's sentence. *Brecht*, 507 U.S. at 623. Dr. Goff's report, which the parties received just two days before the judicial sentencing hearing, stated that the "neuropsychological assessment" administered to Mr. McWilliams reflected "organic brain dysfunction." Dr. Goff found "evidence of cortical dysfunction attributable to right cerebral hemisphere dysfunction," shown by "left hand weakness, poor motor coordination on the left hand, sensory deficits including suppressions of the left hand and very poor visual search skills." These deficiencies were "suggestive of a right hemisphere lesion" and "compatible with

the injuries" Mr. McWilliams said he sustained as a child. The report also stated that Mr. McWilliams' "obvious neuropsychological deficit" could be related to his "low frustration tolerance and impulsivity."

Dr. Goff concluded that although Mr. McWilliams exaggerated certain symptoms, "it is quite apparent that he has some neuropsychological problems." He explained that psychological tests are classified by their "transparency," meaning some tests are easy for the subject to influence to falsely "look bad on," whereas others are not. Mr. McWilliams "performed poorly" on those tasks he would not have been able to manipulate.

The prison records received the morning of the sentencing hearing further supported Dr. Goff's opinion that Mr. McWilliams had neuropsychological problems. Those records indicated that Mr. McWilliams was taking an assortment of psychotropic medications, including Desyrel, Librium, and an antipsychotic Mellaril.

Had Mr. McWilliams and his counsel been given sufficient time to review Dr. Goff's report and the medical records with Dr. Goff himself or with another expert, that data could have been translated into a legal strategy. *See McWilliams*, 137 S. Ct. at 1800. But because the trial court refused to allow a continuance for defense counsel to obtain such assistance, Mr. McWilliams was unable to respond to the prosecutor's argument that there were no mitigating mental health circumstances.

28

Indeed, Mr. McWilliams' counsel stated at the sentencing hearing that he "would be pleased to respond to [the prosecutor's] remarks that there are no mitigating circumstances," but because neither he nor his co-counsel were doctors, neither was really capable of going through those records on their own.

When it sentenced Mr. McWilliams to death, the trial court found no mitigating circumstances, relying heavily on evidence that Mr. McWilliams was "feigning, faking, and manipulative."  As the Supreme Court noted, had Mr. McWilliams received the assistance of an expert to explain Dr. Goff's findings and conclusions—which support a claim that Mr. McWilliams' malingering is not inconsistent with serious mental illness—"he might have been able to alter the judge's perception of the case." *McWilliams*, 137 S. Ct. at 1802.

Testimony from the Rule 32 hearing likewise shows that, had Mr. McWilliams' been able to obtain meaningful assistance from a psychiatric expert, he would have been able to confront the prosecution's evidence of malingering.  The Rule 32 court conducted a four-day evidentiary hearing on Mr. McWilliams' petition, which alleged in part that his counsel rendered ineffective assistance by failing to investigate and present mitigating evidence at his penalty phase and sentencing hearing.  Dr. Woods, a neuropsychiatrist, testified at the hearing that Mr. McWilliams' testing indicated a "cry-for-help."  He also explained the difference between a "fake-bad" and a "cry-for-help" diagnosis: the former is "someone

attempting to make themselves look worse," and though the latter seems similar, it actually reflects "significant psychiatric and psychological problems."

Dr. Woods further explained that the results of the MMPI, which Mr. McWilliams had been given *prior* to his arrest in this case (when he had no incentive to fake his results), were "very, very consistent" with the results of the MMPIs administered post-arrest by the state's doctors. The "internal consistency" of the tests undermined the trial court's impression that evidence of malingering eliminated the possibility that Mr. McWilliams had genuine mental health issues.

Finally, Dr. Woods testified that Mr. McWilliams was suffering from bipolar disorder on the night of the crime. Dr. Woods relied on prison records showing that Mr. McWilliams was medicated with antipsychotics and antidepressants throughout his entire incarceration. Due to the *Ake* error, which precluded meaningful review of these records in advance of the sentencing hearing, Mr. McWilliams was unable to present this or similar evidence to the trial court.

Together, Dr. Goff's report and Dr. Woods' testimony indicate that, had Mr. McWilliams received the assistance he was entitled to under *Ake*, he would have been able to present evidence and arguments to explain that his purported malingering was not necessarily inconsistent with mental illness. *See McWilliams*, 137 S. Ct. at 1800. This could have persuaded the trial court that his organic brain

dysfunction caused sufficient impairment to rise to the level of a mitigating circumstance. *See id*.

Admittedly, the record contains testimony from psychiatrists which supports the prosecution's theory of malingering. *See McWilliams*, 137 S. Ct. at 1810 (Alito, J., dissenting) (summarizing psychiatric evidence that supports the prosecution's theory that Mr. McWilliams was feigning mental illness). But at the very least the record creates "grave doubt" as to whether the *Ake* error had a "substantial and injurious effect or influence" in determining the trial judge's sentence. *O'Neal*, 513 U.S. at 436. As a result, the error is not harmless, and Mr. McWilliams is entitled to habeas relief. *See id*. *See also Booker v. Singletary*, 90 F.3d 440, 444 (11th Cir. 1996) (finding prejudice under *Brecht* because "we were unable to speculate as to the effect of the disregarded 'substantial [mitigating] evidence would have had on the sentencing body'") (quoting *Booker v. Dugger*, 922 F.2d 633, 636 (11th Cir. 1991)); *Smith v. Singletary*, 61 F.3d 815, 818–19 (11th Cir. 1995) (finding prejudice under *Brecht* where the sentencing court precluded the presentation of certain mitigating evidence).

### III

Under our prior decision in *Hicks*, the *Ake* violation in Mr. McWilliams' case constitutes trial error. Under *Brecht* and *O'Neal*, however, the error was not harmless. I would therefore remand to the district court with instructions to issue a

31

writ of habeas corpus vacating the death sentence and requiring Alabama to provide

Mr. McWilliams with a new sentencing hearing in accordance with *Ake*.