**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0408n.06

**No. 18-6132**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 16, 2020
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| MICKEY WILLIAMS, | ) |
|     Petitioner-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| KEVIN HAMPTON, | ) |
|     Respondent-Appellant. | ) |
| | ) |

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF TENNESSEE

OPINION

BEFORE: BATCHELDER, STRANCH, and NALBANDIAN, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Warden Kevin Hampton appeals the conditional grant of habeas relief on *Blakely* grounds to Mickey Lee Williams. Issues presented are (1) whether the state trial court erred by relying at sentencing on the factual conclusion that Williams had a "previous history of unwillingness to comply" with conditions of release without such a finding by the jury, (2) the status of any such Sixth Amendment error under federal law, and (3) whether any such error was harmless. The Warden now concedes that the enhancement applied was inconsistent with *Blakely* and that the state court's decision to the contrary was an unreasonable application of clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d). The only remaining issue in dispute is whether the conceded error was harmless— whether, had the jury been asked to, it would have made the necessary factual findings. Because evidence that would support this enhancement was not presented to the jury, we cannot know what

the jury would have found. Accordingly, there is no basis to conclude that the trial court's error was harmless. We therefore **AFFIRM**.

## I. BACKGROUND

Williams was convicted of second-degree murder and arson for stabbing and killing Terry Johnson and starting a fire in the decedent's home. The facts as recounted by the Tennessee Court of Criminal Appeals ("TCCA") portray a chaotic episode in which Williams stabbed Terry Johnson—the husband of Patricia Johnson, with whom Williams had had an affair—after confronting the Johnsons at their home and fighting with Terry Johnson in the yard. A jury convicted Williams of second-degree murder and arson on June 7, 2004, and the trial court imposed an effective sentence of 24 years.

On October 27, 2004, Williams filed an untimely motion for a new trial, which included a challenge to the trial court's decision to sentence him above the presumptive minimum sentence in reliance on aggravating factors not found by a jury. The trial court denied the motion but, without explanation, reduced Williams's sentence to 23 years. On direct appeal, the TCCA affirmed Williams's conviction, but reinstated the original 24-year sentence on the basis that the trial court was without jurisdiction to modify it. At the state post-conviction stage, the Grainger County Circuit Court denied Williams's post-conviction claims as to trial court error, but granted a delayed appeal, finding that Williams's trial counsel was ineffective for failing to file a timely motion for new trial. Williams raised his *Blakely* claim in another motion for new trial and it was denied on the merits.

Williams filed a § 2254 federal habeas petition on September 16, 2015, raising numerous grounds for relief concerning his trial, sentencing, and state court collateral proceedings. On September 26, 2018, the district court issued a comprehensive opinion denying all but Williams's

*Blakely* claim. It reasoned that the trial court erred by relying on facts not found by the jury to impose a sentence above the presumptive minimum. The Warden appeals the disposition of Williams's *Blakely* claim.

## II. ANALYSIS

### A.    Standard of Review

In a federal habeas case, we review a district court's conclusions of law de novo. *Hand v. Houk*, 871 F.3d 390, 406 (6th Cir. 2017). We review a district court's own findings of fact for clear error. *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner is entitled to relief on a constitutional claim adjudicated by a state court on the merits only where the state court decision was "contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). In addition to showing that the state court's adjudication of a constitutional claim warrants federal relief under § 2254(d), a *Blakely* error must amount to more than harmless error. *Lovins v. Parker*, 712 F.3d 283, 303 (6th Cir. 2013). To establish a harmful error on habeas review, Williams must show that the *Blakely* error had "'a substantial and injurious effect' upon [his] sentence, or that there is 'grave doubt' as to whether the error had such an effect." *Owens v. Parris*, 932 F.3d 456, 459 (6th Cir. 2019) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)); *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

**B.**     **Discussion**

1.   Clearly Established Federal Law

In *Apprendi v. New Jersey*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). It then clarified this holding in *Blakely v. Washington*, reasoning that "'the statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendants*." 542 U.S. 296, 303 (2004) (emphasis in original); *see also Lovins*, 712 F.3d at 289–90.

At the time the district court issued its opinion, the question of whether the Tennessee Supreme Court's application of *Blakely* to judicial fact-finding at sentencing was "contrary to, or involved an unreasonable application of," Supreme Court precedent was pending before this court in *Owens v. Parris*. 932 F.3d at 459. We concluded that it was unreasonable. *Id. Owens* held that the Tennessee sentencing scheme allowing judges to find facts that increased a defendant's exposure to punishment violated the Sixth Amendment, and that the Tennessee Supreme Court's decision to the contrary was an unreasonable application of *Blakely*. *Id.* at 458–59. In light of *Owens*, the Warden now concedes that Williams's sentence violated the Court's clearly established Sixth Amendment jurisprudence and that the only remaining issue on appeal is whether the error was harmless.

2.   Harmless Error

The trial court found three sentencing enhancement factors applicable to Williams's second-degree murder conviction: "(1) previous history of criminal convictions in addition to that necessary to establish the appropriate range; (2) previous history of unwillingness to comply with conditions of release in the community; and (3) possession or use of a deadly weapon during the

commission of the offense." *Williams v. Cook*, No. 3:15-CV-00415, 2018 WL 4621820, at *17 (E.D. Tenn. Sept. 26, 2018). Based on these enhancements, the trial court increased Williams's sentence from the presumptive sentence of 20 years to a term of 25 years. *Id.* The sentencing court explained that it placed "great weight" on the first and third enhancement factors; but also included the second factor in its sentencing decision. *Id.* It then lowered Williams's sentence to 24 years in light of life history information presented in mitigation. *Id.* The parties agree that the first enhancement factor occupies the exception explained in *Blakely*, 542 U.S. at 302, permitting judicial fact-finding about a defendant's criminal history, and that the third was necessarily encompassed by the jury's findings of fact. *Id.* at *17 n.18. Only the second enhancement factor is at issue in this appeal. *See* Tenn. Code Ann. § 40-35-114(9) (2004).

To assess whether the conceded error had a substantial and injurious effect upon Williams's sentence, we ask "whether the jury would have found [the enhancement] if that question had been submitted to it." *Owens*, 932 F.3d at 459. *Owens* explained that "the question whether the court would have imposed the same sentence on remand is itself incoherent in cases where—as here— the court's factfinding *liberated* the court to impose the sentence that the court in fact imposed, rather than mandated that sentence." *Id.* at 460. And it concluded that "[w]hat is missing . . . is a jury finding, not a judicial one. Hence the question as to harmlessness is whether the jury would have made the necessary finding had the jury been asked to make it." *Id.* Because the court's fact-finding "liberated" it to impose the sentence at issue in this case, that test applies here.

*Owens* concluded that the factual findings necessary to the "exceptional cruelty" enhancement at issue were established from the findings made by the jury. We reasoned that because the "jury did in fact convict him of second-degree murder. . . . we are confident that the jury rejected Owens's account of the murder and accepted the State's." *Id.* at 460–61. And

because believing Owens's testimony would have been the only basis not to find the facts necessary to the enhancement, we had "little doubt that, if asked, the jury would have made the requisite finding" that Owens's actions constituted "psychological abuse or torture." *Id.* at 461. Critically, we asked what the jury would have found based on the evidence actually presented to it.

Here, by contrast, the evidence of the enhancement at issue was not—in any form—before the jury. Unlike in *Owens*, where evidence about the circumstances surrounding the crime had the effect of supporting a finding of the exceptional cruelty enhancement, the jury in this case was presented with no evidence that had any bearing on whether Williams had a previous history of unwillingness to comply with conditions of release. Neither the enhancement, nor any evidence related to it, was presented to the jury. And because the state did not present the jury with such evidence, we are not in a position to know or derive what the jury would have found had it been asked. It cannot be said, therefore, that the constitutional error in question was harmless. Moreover, we know this enhancement had some impact on the trial court's sentence because, when presented with the *Blakely* error, it attempted (ultimately unsuccessfully) to lower Williams's sentence. *See Williams*, 2018 WL 4621820, at \*23; *see also Lovins*, 712 F.3d at 303–04. In sum, because evidence of the enhancement was never presented to the jury, the trial court's *Blakely* error was not harmless.

### III. CONCLUSION

Because the *Blakely* error in question was not harmless, we **AFFIRM** the conditional grant of habeas relief to Williams.

**NALBANDIAN, Circuit Judge, concurring in judgment.** I agree with the lead opinion that the jury never heard evidence on the sentencing enhancement and that Williams's sentence stemmed from judicial factfinding, which constitutes a *Blakely* error. I also agree that the error was not harmless. So I join Judge Stranch's conclusion that the error produced a "substantial and injurious effect or influence" on Williams's sentence under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). That said, I disagree with how the lead opinion's harmless error analysis cabins itself to evidence that the jury considered. Instead, I believe that this Court should determine what a jury would have done had it heard the full evidence available to the sentencing judge. Under that analysis, a *Blakely* error is harmless if the jury would have applied the sentencing enhancement had it heard the government's case. All in all, I find that the *Blakely* error here wasn't harmless, but I would use a broader framework than the one applied by the lead opinion. Thus, I concur.

When addressing a harmless error question, like the one here, this Court asks "whether the jury would have returned the same verdict absent the error." *Owens v. Parris*, 932 F.3d 456, 460 (6th Cir. 2019) (quoting *Washington v. Recuenco*, 548 U.S. 212, 221 (2006)). Applying *Owens*, the lead opinion reasons that because the jury heard little about the enhancement, or evidence supporting the enhancement, the error could not have been harmless. Yet I do not agree that the government's failure to present evidence on a sentencing enhancement to a jury necessarily precludes finding a harmless *Blakely* error. Rephrased, the government's error can still be harmless even when a jury fails to hear details about the enhancement, so long as no structural error occurs.[1] When performing harmless error review, federal courts must rule "in light of the record as a whole[.]" *Brecht*, 507 U.S. at 638; *accord, e.g.*, *McWilliams v. Comm'r, Ala. Dep't of Corrs.*,

---

[1]Structural errors touch "the framework of any criminal trial," such as failure to respect the defendant's right to counsel or to a public trial. *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907–1909 (2017).

940 F.3d 1218, 1226 (11th Cir. 2019) (appellate courts must "look to the record of the state trial court as a whole" when reviewing for harmless error under *Brecht*). That's because the point of harmless error inquiry is to ask what would have happened without the trial error. *See Brecht*, 507 U.S. at 629. In short, the government's failure to show the jury the last card in a winning hand constitutes harmless error, assuming no structural error occurred. *See United States v. Henderson*, 626 F.3d 326, 333 (6th Cir. 2010) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986) ("Errors are deemed harmless when 'the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond doubt.'")). But that counterfactual analysis turns on whether the government presented a convincing case.

The government had the burden to establish Williams's "previous history of unwillingness to comply with the conditions of a sentence involving release in the community." Tenn. Code Ann. § 40-35-114(9) (2004). The record reflects weaknesses in the government's case suggesting the error's harmfulness. First, the government relied on the wrong conviction at trial when arguing that the sentencing enhancement should apply. Although the sentencing enhancement sprung from an April 1996 DUI, the government erroneously relied on a 1998 DUI during the sentencing hearing. (R. 12, Tr. Sentencing Hr'g, PageID # 998.) When reconstructing a trial to review for harmless error, failure to discuss the correct episode of noncompliance strikes me as too grave misstep to pave over. It's hard to imagine that we would uphold, in a typical case, a sentence where the jury never heard evidence over the probation violation supporting a sentencing enhancement.

Next, Williams presents a colorable argument that a jury might not have found that his singular violation of probation conditions amounted to a history of noncompliance. On its face, the enhancement's "previous history" language might well require multiple probation violations. Yet although the sentencing judge did not fully explain why he applied the previous history

sentencing enhancement, Tennessee state court decisions suggest that even one probation violation can trigger the enhancement. *See*, *e.g.*, *State v. King*, No. E2002-00634-CCA-R3-CD, 2003 WL 21261775, at *7–8 (Tenn. Crim. App. June 2, 2003); *State v. Ussery*, No. M2000-00194-CCA-R3-CD, 2000 WL 1369494, at *4 (Tenn. Crim. App. Sept. 22, 2000). Williams, I think, rightly frames this as a question of law: Whether one incident, here a DUI, can satisfy the previous history requirement. And answering legal questions falls outside the jury's purview.

Still, even though Williams cannot complain that the jury didn't consider a question of law, he's right that the jury still needed to make the factual determination that his singular probation violation at issue met the enhancement's requirements. Although *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), does not require that "the fact of a prior conviction . . . be submitted to a jury," the government needed to show more than Williams's conviction. It also needed to prove that the DUI violated Williams's release conditions. In the end, the jury had to find that Williams committed the DUI while on probation, yet the government offered scant evidence on that issue.

Considering these gaps in the government's argument, I cannot conclude that a jury would have found the predicate facts supporting the previous history enhancement if, like the sentencing judge, it was privy to all contours of the case. *Owens* tells us that harmless error must relate to "a jury finding, not a judicial one." 932 F.3d at 460. But that holding does not confine this Court's analysis to the evidence heard by the jury. It follows that we resolve these claims by hypothesizing about how the jury would have ruled, were it given the chance, based on the record built at trial. Looking at the trial record as a whole, which includes evidence introduced during the sentencing hearing, the government's missteps confirm that the *Blakely* error was not harmless. Because I don't believe that a jury would have applied the previous history enhancement had it made the decision instead of the sentencing judge, I would AFFIRM.

**ALICE M. BATCHELDER, Circuit Judge, dissenting.** Because I find the sentencing error in this case was harmless, I respectfully dissent. At Williams's sentencing hearing, the trial court explained its determination of the enhancement factors as follows:

> The [c]ourt has considered the principles set forth in the Criminal Sentence Reform Act of 1989, listened to arguing of counsel, the record, the trial record, the pre-sentence investigation report[,] and with regard to the Second Degree Murder Conviction the [c]ourt finds the following enhancing factors to apply:
>
> [1] That the defendant does have a previous history of criminal convictions in addition to that necessary to establish the appropriate [sentence] and the [c]ourt *will take great weight in that factor*.
>
> [2] The [c]ourt does find that the defendant has a previous history of unwillingness to comply with conditions release in the community.
>
> [3] The [c]ourt finds that the defendant possessed or employed a deadly weapon during the commission of the offense, *puts great weight in that factor*.
>
> The sentence is presumptive of 20 [years in prison]. The [c]ourt finds that the previous enhancing factors noted by the [c]ourt are sufficient to and should increase this defendant's sentence to 25 years.
>
> The [c]ourt remembers the testimony from the one witness that stated that this defendant did intend to go, and in fact, take the life of Mr. Johnson on this occasion and the [c]ourt, the trial court - - I mean the jury could in fact have returned a verdict of First Degree Murder.

R. 12-7 at 7-8 (Sentencing Trans., June 7, 2004) (numbering and emphasis added).

As both the district court and the lead opinion aptly explained, neither the first nor the third enhancement is at issue; both were properly considered and applied. *See*, *e.g.*, *Williams v. Cook*, No. 3:15-cv-00415, 2018 WL 4621820, at *22 (E.D. Tenn. Sept. 26, 2018). The second enhancement, i.e., Williams's "previous history of unwillingness to comply with the conditions of a sentence involving release in the community," Tenn. Code. Ann. § 40-35-114(9) (2004), is based on undisputed evidence from the pre-sentence investigation report, which documented that: (1) Williams was convicted of public intoxication on April 11, 1996 (his third such offense in three weeks) and placed on 30 days probation; (2) Williams was convicted of driving under the influence (DUI) just two weeks later, on April 25, 1996; and (3) Williams committed over a dozen additional

offenses between the April 1996 DUI and the present murder and arson in March 2002, including a vandalism offense in August 2001 that placed him on probation with the East Tennessee Human Resource Agency (ETHRA) for an unstated period of time. R. 12-1 at 64-67; PgID 611-14. Neither this evidence of Williams's prior offenses nor this contention that the sequence of offenses shows an "unwillingness to comply" with conditions of a release into the community was presented to the jury, so the jury was never asked to decide either. Regardless, I cannot agree that this necessarily invalidates the sentence imposed here for the murder and arson. Even omitting this second factor altogether, the first and third factors (i.e., the prior convictions and deadly weapon)—along with the sentencing court's remark that the jury could have convicted Williams of first-degree murder—are more than sufficient to support the sentencing decision.

In *Villagarcia v. Warden, Noble Correctional Institution*, 599 F.3d 529, 536 (6th Cir. 2010), we expressly "adopted the more state-friendly standard of *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993), for determining harmless error in cases involving collateral review of state-court decisions." *Lovins v. Parker*, 712 F.3d 283, 303 (6th Cir. 2013) (quotation marks omitted). "[I]n cases involving review of a state-court criminal judgment under 28 U.S.C. § 2254, an error is harmless unless it had substantial and injurious effect or influence," or "the matter is so evenly balanced that [we have] grave doubt as to the harmlessness of the error." *Villagarcia*, 599 F.3d at 536-37 (quoting *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (quotation marks and citations omitted).

Because I cannot conclude that the error here had a substantial and injurious effect or influence on the sentence and because I do not have a grave doubt as to the harm, I would hold the error harmless and deny the habeas petition. Therefore, I must respectfully dissent.